UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

LORI MCGRATH,

    Plaintiff,

v.

THE STATE OF NEVADA DEPARTMENT OF PUBLIC SAFETY, NEVADA HIGHWAY PATROL,

    Defendant.

3:07-CV-00292-LRH-VPC

ORDER

    Plaintiff Lori McGrath alleges Defendant State of Nevada Department of Public Safety, Nevada Highway Patrol (NHP) violated Title VII's anti-retaliation provision by retaliating against her for complaining about a coworker's sexual harassment.  Because McGrath has failed to present a genuine issue for trial, NHP's motion for summary judgment is granted.

**I.   Facts**

    Because the court considers this case on a motion for summary judgment, the court must view the evidence in the light most favorable to McGrath.  *See Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001).

    McGrath has been a NHP trooper in its commercial enforcement division since 1988.  During that time, she was friends with a fellow NHP trooper named Scott Simon.  Beginning in 2000, Simon began buying McGrath gifts, including flowers, a coat, a fish tank, luggage, and a

beauty set. While McGrath suspected that Simon may have had romantic intentions, her suspicions were not confirmed until May 2001, when Simon asked her out on a date. McGrath declined Simon's offer, which caused Simon to express some anger. After May 2001, Simon did not further pursue McGrath, but he did glare at her and failed to greet her in the hallway.

Following the May 2001 incident, McGrath told Sergeant Cam Mumms, her supervisor, that Simon asked her out. She also told Munns and two other supervisors, Lieutenant Peterson and Lieutenant Woodsoon, that she did not want to train at a particular canine facility because it was a "hostile work environment." Later that year, McGrath alleges that NHP retaliated against her by failing to give her special assignments and not including her in NHP's canine program.

In December 2001, the Nevada Attorney General's Office declined to represent McGrath in a lawsuit. Also about that time, McGrath's job evaluations went from above standard to standard.

In January 2002, McGrath filed a Nevada Equal Rights Commission (NERC) complaint alleging that she had been harassed and denied equal employment terms on account of her gender. In January 2003, McGrath filed another NERC complaint alleging that she was retaliated against for filing the January 2002 NERC complaint.

On August 11, 2003, McGrath's attorney, Mark Wray, wrote a letter to the Nevada Attorney General's Office detailing a series of events involving Simon and his "vendetta" against McGrath. The letter describes Simon's gifts to McGrath and how McGrath rejected Simon's request for a date. The letter also describes a contentious relationship between Simon and McGrath after their falling out.

In April 2005, McGrath filed a formal complaint against Chief Hosmer, alleging that he yelled at McGrath for her supposed intention to file a grievance concerning another division's pay raise.

In October 2005, Simon requested a reassignment from NHP's traffic enforcement division to NHP's commercial enforcement division. Major Bob Wideman approved Simon's request on

1 February 24, 2006. McGrath discovered Wideman's approval the same day and complained about
2 the reassignment to her supervisor. On February 28th, McGrath and her attorney met with
3 Lieutenant Bainter and Sergeant Fisher regarding Simon's reassignment. Also on February 28th,
4 Wideman and Bainter met with George Togliatti, Kimberly King, Kathalie Koche, and Michael
5 Jensen to discuss Simon's reassignment and McGrath's concerns. The group affirmed Wideman's
6 decision to reassign Simon to the commercial enforcement division. However, to accommodate
7 McGrath's concerns, they decided that the reassignment would be contingent on Simon agreeing
8 that he and McGrath could not work on the same shift. Simon agreed to this condition and began
9 working at the commercial enforcement division. Following his reassignment, Simon exhibited no
10 inappropriate conduct toward McGrath. In March 2008, Simon transferred to another division of
11 NHP.

**II.     Legal Standard**

    **A. Summary Judgment**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could

1  find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.
2  1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

3    In order to successfully rebut a motion for summary judgment, the nonmoving party must
4  point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v.*
5  *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might
6  affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
7  242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary
8  judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute
9  regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could
10 return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of
11 a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a
12 genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff.
13 *See id.* at 252.

   **B. Title VII Retaliation**

   "Title VII's anti-retaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 59 (2006). To make out a prima facie case of Title VII retaliation, a plaintiff must show that "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision." *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 965 (9th Cir. 2004).

**III.  Discussion**

   **A. Title VII Retaliation**

   NHP's motion for summary judgment argues McGrath fails to present a triable issue in

support of her Title VII retaliation claim. To address NHP's motion, the court will review each of the instances McGrath alleges constitute retaliation.

### 1. Failure to Provide Special Assignments

The first actions McGrath contends were retaliation for protected Title VII activity are (1) NHP's failure to give her special assignments and (2) NHP's decision not to include her in NHP's canine program. McGrath has failed to present a prima facie case as to these instances of alleged retaliation because she has not shown that she had engaged in any protected activity at that time. In her deposition, McGrath testified that prior to the allegedly retaliatory acts, she told her supervisor, Sergeant Cam Munns, that Simon had asked her out. McGrath also testified that she told Munns, Lieutenant Woodson, and Lieutenant Peterson that she did not want to train at a particular canine facility because it was a "hostile work environment."

Title VII's anti-retaliation provision forbids retaliation for opposing a practice that Title VII forbids. While the phrase "hostile work environment" may evoke images of gender discrimination to one trained in the law, the court cannot subject NHP to Title VII liability without some showing that McGrath told her supervisors that she was experiencing trouble on account of her gender.[1] *Cf. Pool v. VanRheen*, 297 F.3d 899, 910-11 & n.7 (9th Cir. 2002) (holding under an analogous anti-retaliation provision that the plaintiff failed to show she engaged in a protected activity because her complaint did not allege discrimination on the basis of race or sex).

### 2. Failure to Represent

McGrath also alleges NHP retaliated against her when the Nevada Attorney General's Office decided in December 2001 that it would not represent her in a lawsuit.[2] McGrath cannot

---

[1] In fact, after some apparent confusion in her deposition, McGrath testified that her first allegation of gender discrimination or retaliation concerning Simon occurred in an unidentified EEOC complaint. (McGrath Depo (#20) Ex. E at 114:15-19.) The only formal discrimination complaints on record were in 2002, 2003, and 2005. (*See* McGrath Dep. (#19) at 152:23-154:12; Santoyo Aff. (#19).)

[2] The Attorney General's Office eventually reversed its decision and represented McGrath.

5

1 show any Title VII retaliation with respect to this instance, as she did not engage in any protected
2 activity before December 2001. Moreover, NHP correctly points out that McGrath did not exhaust
3 her administrative remedies concerning this allegation. *See Vasquez v. County of Los Angeles*, 349
4 F.3d 634, 644 (9th Cir. 2003).

### 3. Standard Evaluation

McGrath also alleges NHP retaliated against her by giving her standard job evaluations as opposed to the above-standard job evaluations she had received in the past. The court agrees with NHP that a standard evaluation does not constitute an adverse employment action. The Supreme Court has established an objective standard for determining whether an employee has suffered an adverse employment action. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006). Specifically, the Court has held "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal quotation marks omitted).

In the present case, the court finds as a matter of law that a standard evaluation would not dissuade a reasonable worker from making a charge of discrimination. NHP has presented unrebutted evidence that a standard evaluation would have no effect on any term of McGrath's employment. Moreover, with one exception, the Ninth Circuit has consistently stated that an undeserved *negative* job evaluation constitutes an adverse employment action. The only exception occurred in *Ray v. Henderson*, where the court stated, in dicta, that "undeserved performance ratings, if proven, would constitute 'adverse employment decisions.'" 217 F.3d 1234, 1241 (9th Cir. 2000). This statement, however, did not signal a departure from the Ninth Circuit's precedents, as the court was quoting *Yartzoff v. Thomas*, which involved a "subaverage performance rating." 809 F.2d 1371, 1375 (9th Cir. 1987).

///

6

### 4. Simon's Reassignment

The last and perhaps primary occurrence McGrath relies upon to show Title VII retaliation is Simon's reassignment into NHP's commercial enforcement division. NHP does not dispute that McGrath engaged in several instances of protected Title VII activity before Simon's reassignment, including formal discrimination complaints in January 2002, January 2003, and April 2005. NHP does dispute, however, that these instances of protected activity alone can show a causal relationship between the protected activity and Simon's reassignment. NHP's argument is well taken.

Major Bob Wideman decided to reassign Simon to NHP's commercial enforcement division on February 24, 2006. Thus, viewing McGrath's April 2005 complaint as the final instance of protected activity, ten months had elapsed from the protected activity to Simon's reassignment. Because McGrath offers no more than temporal proximity between the two events to show causation, she cannot show NHP reassigned Simon in order to retaliate again her. *See Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1036 (9th Cir. 2006) (seven-month time lapse did show causation) *Mannatt v. Bank of America, NA*, 339 F.3d 792, 802 (9th Cir. 2003) (nine-month time lapse did not show causation); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (stating that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close,'" and citing cases finding a three month and four month period insufficient).[3]

Finally, McGrath argues that NHP's proffered reasons for reassigning Simon were pretextual because (1) the commercial enforcement division was overstaffed after Simon's arrival

---

[3]McGrath also appears to argue that NHP's decision to keep Simon in the commercial enforcement division constituted an adverse employment action. The Supreme Court rejected an almost identical argument in *Breeden v. Clark County School District*, where it found that an employer need not suspend a plaintiff's job transfer when the transfer had already been contemplated before the decision maker learned of the plaintiff's protected Title VII activity. 532 U.S. 268, 272 (2001).

and (2) there were other troopers who had requested reassignment to the commercial enforcement division before Simon.  In support of her argument, McGrath relies upon a "March 2006 Northern Command SafeStat Report," which states, "During the first week of March, the Commercial Enforcement Section was filled and we are now one (1) position over capacity."  McGrath also relies upon her deposition testimony in which she states that other troopers had requested a transfer into the commercial enforcement division before Simon.  (McGrath Dep. (#19) Ex. E at 224:12-225:21.)  With respect to the SafeStat report, McGrath has provided no authentication for this document or any showing that it comes within an exception to the rule against hearsay. McGrath's deposition testimony regarding the other troopers' requests for reassignment is also inadmissible hearsay.  These matters are therefore not properly considered at summary judgment.  *See Orr v. Bank of America, NT*, 285 F.3d 764, 773-74, 778-79 (9th Cir. 2002).

Moreover, even if these matters were presented through admissible evidence, McGrath would still be unable to produce an issue for trial.  McGrath's argument of pretext is putting the cart before the horse.  A causal link between a protected activity and an adverse employment action is part of a prima facie Title VII retaliation case.  *See Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).  Only after a plaintiff establishes a prima facie case does the burden shift to the defendant to articulate a legitimate nondiscriminatory reason for its allegedly retaliatory decision.  *See id.*  However, because McGrath never presented a genuine issue concerning causation, the burden never shifted.  Thus, McGrath's purported showing of pretext does not salvage her failure to present a prima facie case.  Summary judgment is therefore warranted on McGrath's Title VII retaliation claim.

### B. Intentional Infliction of Emotion Distress

Defendant is also entitled to summary judgment on McGrath's claim for intentional infliction of emotion distress.  This court allowed McGrath to present evidence in support of this claim based on her complaint's allegation that "she has been subject to repeated verbal abuse from

8

1  Chief David Hosmer." (Compl. (#1) ¶ 10.) McGrath's opposition to summary judgment, however,
2  is conspicuously devoid of any evidence to support her allegation. Furthermore, based on the other
3  evidence presented to this court, there is nothing from which a reasonable jury could find that NHP
4  engaged in extreme and outrageous conduct. *See Branda v. Sanford*, 637 P.2d 1223, 648 (Nev.
5  1981).

  IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (#19) is
GRANTED.

  The Clerk is directed to enter judgment accordingly.

  IT IS SO ORDERED.

  DATED this 27th day of March 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE